(C.D. 2862)

Tice & Lynch, Inc. v. United States

United States Customs Court, Second Division

(Decided December 27, 1966)

*William J. Barnhard** and *Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Sheila N. Ziff* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Certain X-ray diffraction and spectroscopy equipment and parts thereof, imported from Germany through the port of New York, were classified by the collector of customs as laboratory instruments and parts thereof in paragraph 360 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649, or by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 22½ per centum ad valorem or at 25½ per centum ad valorem, depending upon the date of entry.

It is the contention of plaintiff that the merchandise in controversy should properly have been classified as X-ray apparatus and parts

*Vid. Abstract 69775.

thereof within the purview of paragraph 353 of said act, as modified by the Presidential proclamation and sixth protocol, *supra*, and subjected to duty at the rate of 6½ per centum ad valorem or 7½ per centum ad valorem, according to the date of imporation.

The competing provisions of the tariff act, as modified, are here set forth.

Paragraph 360 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, *supra:*

Scientific and laboratory instruments, apparatus, utensils, and appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*_____ 22½% ad val.

Paragraph 360 of said act, as modified by the sixth protocol, *supra:*

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*_____ 25½% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, *supra:*

Electrical apparatus, instruments (other than laboratory), and devices, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Therapeutic (including diagnostic), and parts thereof
X-ray, and parts thereof (except tubes and parts thereof) _____ 6½% ad val.

Paragraph 353 of said act, as modified by the sixth protocol, *supra:*

Electrical X-ray apparatus, instruments (other than laboratory), and devices finished or unfinished, wholly or in chief value of metal, and not specially provided for (except X-ray tubes) _____ 7½% ad val.

When this case was called for hearing, a motion of plaintiff to consolidate the three protests involved for purposes of trial and decision was granted.

The parties thereupon entered into an agreement of fact that the merchandise in issue consists of electrical X-ray apparatus. It was further stipulated and agreed that said apparatus is in chief value of metal.

Plaintiff called six witnesses to testify in its behalf, and one witness appeared for the defendant.

The following parties appeared for the plaintiff:

Dr. Lothar Seifert, a physicist, and division manager of Siemens America, Inc., of New York City, the actual importer of the merchandise in controversy. He has been with the Siemens firm since 1958 and is in charge of the sales and servicing of X-ray equipment.

Dr. Eugene Bertin, senior engineer and responsible for all X-ray work done at the Harrison, N.J., plant of the Radio Corp. of America and, to some extent, for the X-ray work at certain other of the Radio Corp. of America plants. He has published between 20 and 30 papers in the field of X-ray diffraction and spectrometry.

Francis J. Herrmann, holds a bachelor's and master's degree in electrical engineering and, since 1952, has been employed as manager of the scientific instruments group of the Radio Corp. of America at Camden, N.J. He testified that the Radio Corp. of America has handled Siemens X-ray line of equipment for approximately 4 years.

George A. Brown identified himself as manager of the "applications laboratory" of Siemens America, Inc., whose duty it was to demonstrate X-ray equipment similar to that in issue to prospective customers and after sale to instruct the personnel, if necessary, in the use and application of the equipment to specific needs.

Arthur Edward Greaves who holds a bachelor's degree in physics is manager of the X-ray division of Siemens Medical of America, which division is concerned with the sale and servicing of medical X-ray equipment in the United States for the Siemens company.

Dr. Paul P. Ewald, presently retired, is a professor emeritus of Brooklyn Polytechnic Institute, who had received his degree in Munich, Germany, in 1912, the year after the discovery of X-ray diffraction by Max von Laue, and within whose knowledge it was that X-ray apparatus was used in diffraction and was commercially available in the United States prior to 1930.

Appearing as defendant's sole witness was Dr. William F. Loranger, products manager of the X-ray electron optics division of Picker X-Ray Corp., N.Y. He holds a Ph. D. in chemistry from the University of Illinois and has taught in three state universities in the department of chemistry and at the United States Military Academy in the department of chemistry and physics. He was formerly technical

advisor of sales in the X-ray department of the General Electric Co. at Milwaukee, Wis. He has authored or coauthored about 20 papers on the subject of X-ray equipment and its applications. (A listing of said papers was received in evidence as defendant's exhibit A.)

There is little to be gained, in the circumstances of the present controversy, by expounding at length on the testimony in this case which concerns itself to a great extent with a detailed identification of the various items in issue and their functioning and a reference to the application of X-ray equipment generally in science, medicine, and industry.

It is axiomatic that, for plaintiff to succeed in the present controversy, it must prove to the court that the classification of the merchandise in issue by the collector of customs was erroneous and that its claimed classification is the correct one to be applied. *United States (Index Industrial Corp., Party In Interest)* v. *National Starch Products, Inc.,* 50 CCPA 1, C.A.D. 809.

Inherent in the presumption of correctness attaching to the classification of the imported articles as laboratory instruments and parts thereof by the collector of customs is the fact that he has found all facts necessary to such a classification. *F. H. Kaysing* v. *United States,* 49 CCPA 69, C.A.D. 798. One of said considerations is that the imported devices are used for laboratory purposes since it has been judicially construed that the provision for laboratory instruments in paragraph 360 of the Tariff Act of 1930 covers those instruments which are used for laboratory purposes of experiment and study and that place of use is not the controlling criterion. *R. J. Saunders & Co., Inc.* v. *United States,* 45 CCPA 87, C.A.D. 678.

However, whether or not the imported articles are laboratory instruments, in view of the instant protests and in the light of the agreement entered into by the parties that the merchandise in issue consists in fact of electrical X-ray apparatus, the court is called upon to determine as a matter of law whether the statutory provision for electrical X-ray apparatus in paragraph 353 of the tariff act, as modified, is more specific.

It is to be noted that the language of said paragraph 353 with which we are here concerned reads "Electrical X-ray apparatus, instruments (other than laboratory), and devices * * *" with the exclusionary language "other than laboratory" being limited by all rules of grammatical construction to the word "instruments," leaving the words "apparatus" and "devices" without words of limitation. That this was the clear-cut intent of Congress finds support in the following

colloquy between J. M. Roberts of Chicago, Ill., representing the Metal Instrument Section of the Scientific Apparatus Makers of America, and a subcommittee of the Senate Finance Committee of Congress at committee hearings on H.R. 2667 of the 71st Congress, 1st session, which bill became the Tariff Act of 1930, said colloquy being referred to by plaintiff in its brief:

MR. ROBERTS. * * *

The intent of paragraph 353 evidently was to include all commercial appliances using electricity, also therapeutic and X-ray appartus, which is all right. We do not consider any of these belonging to paragraph 360; but we do claim for this paragraph all scientific instruments, including those as applied to electricity. We therefore suggest that the word "instruments" be omitted from paragraph 353, as its meaning is too broad to be applied to a paragraph dealing chiefly with commercial appliances.

*     *     *     *     *     *     *

SENATOR REED. If in paragraph 353 we inserted a parenthetical clause reading "other than laboratory instruments" it would pretty nearly cover it, would it not?

MR. ROBERTS. I judge so. * * *

In view of the fact that the limiting language "other than laboratory" appearing in paragraph 353 of the Tariff Act of 1930, as modified, is confined to electrical X-ray *instruments* and does not apply to "electrical X-ray apparatus," it is evident to the court that Congress intended that electrical X-ray apparatus would be classified in said paragraph 353 and would be subject to its duty provisions whether or not said apparatus was used for laboratory purposes.

Predicated upon the agreement of counsel that the imported articles consist of electrical X-ray apparatus and in view of the clear congressional intent to include such apparatus within the purview of paragraph 353 of the tariff act, the court holds that the X-ray diffraction and spectroscopy equipment and parts thereof in controversy should properly have been classified as electrical X-ray apparatus and parts thereof within the purview of paragraph 353 of the Tariff Act of 1930, as modified by the Presidential proclamation and sixth protocol, *supra*, and subjected to duty at the rate of 6½ per centum ad valorem or 7½ per centum ad valorem, according to the date of entry, as claimed by plaintiff. That claim in the protests enumerated above is, therefore, sustained.

Judgment will be entered accordingly.